UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------x
                         :
KELVIN DAMASSIA, et al., on behalf of  :
themselves and all others similarly situated,  :
                         :
               Plaintiffs,  :
                         :
       -v-                :        04 Civ. 8819 (GEL)
                         :
DUANE READE, INC.,          :
                         :
               Defendant.  :
                         :
----------------------------------------------------------x    **OPINION AND ORDER**
                         :
ENAMUL CHOWDHURY, individually and on  :
behalf of all other persons similarly situated,  :
                         :
               Plaintiff,  :
                         :
       -v-                :        06 Civ. 2295 (GEL)
                         :
DUANE READE, INC., and DUANE READE  :
HOLDINGS, INC.,             :
                         :
               Defendants,  :
                         :
----------------------------------------------------------x

Adam T. Klein, Justin M. Swartz, Linda A. Neilan,
and ReNika C. Moore, Outten & Golden LLP,
New York, NY, and Seth R. Lesser and Fran L.
Rudich, Locks Law Firm, PLLC, New York, NY,
for plaintiffs.

Craig R. Benson, Gerald T. Hathaway, and
Stephen A. Fuchs, Littler Mendelson, New York, NY,
for defendants.

GERARD E. LYNCH, District Judge:

In these related suits for failure to pay overtime wages, plaintiffs move to certify classes pursuant to Rule 23 of the Federal Rules of Civil Procedure for their claims brought under the New York Labor Law.  The motion will be granted.

## BACKGROUND

Plaintiffs in these two related suits, Damassia v. Duane Reade, Inc., No. 04 Civ 8819 ("Damassia"), and Chowdhury v. Duane Reade, No. 06 Civ 2295 ("Chowdhury"), are former assistant managers at stores operated by defendants Duane Reade, Inc., and Duane Reade Holdings, Inc. (collectively, "Duane Reade"), the New York drug store chain.  Plaintiffs allege that the company failed to pay them overtime as required under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, and New York Labor Law ("NYLL") §§ 650 et seq. (Damassia Second Amended Compl. ("Damassia Compl.") ¶¶ 54, 170, 178; Chowdhury Compl. ("Chowdhury Compl.") ¶¶ 10, 16, 21, 35, 50, 58.)

Duane Reade admits that it has not paid assistant managers overtime, but contends that it is not required to do so "by virtue of their status as exempt executives and/or administrators." (Damassia Answer to Second Amended Compl. ("Damassia Answer") 18, 21; Chowdhury Answer ("Chowdhury Answer") 5, 8-9.)  Duane Reade also contends that its decision to classify plaintiffs as exempt was made in "good faith" reliance on an administrative opinion of the Department of Labor.  (Damassia Answer 21; Chowdhury Answer 9.)

This Court earlier granted plaintiffs' motions to authorize collective actions for their FLSA claims, which are actions that allow employees to sue on behalf of themselves and other employees who are "similarly situated."  See 29 U.S.C. § 216(b); Chowdhury, 2007 WL

2873929 at *6 (S.D.N.Y. Oct. 2, 2007); <u>Damassia</u>, 2006 WL 2853971 at *8 (S.D.N.Y. Oct. 5, 2006).  There is no provision for collective actions under the NYLL.  Instead, plaintiffs seek class certification for their state law claims pursuant to Rule 23 of the Federal Rules of Civil Procedure.  Plaintiffs propose that they be permitted to sue as representative parties on behalf of:

> All persons employed by Duane Reade, Inc. as assistant managers whom Duane Reade classified as exempt from the overtime requirements of the NYLL at any time between November 5, 1998 and the date of final judgment in this matter.

Pl. Mot. for Class Certification 2.

## DISCUSSION

### I.     Rule 23 Requirements

In order to certify the proposed class, plaintiffs must demonstrate that the class and its proposed representatives meet all of the requirements of both Rule 23(a) and one of the subsections of Rule 23(b).  The requirements of Rule 23(a) for certifying a class are

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  In addition, the relevant subsection of Rule 23(b) provides that questions of law or fact common to the members of the class "predominate" over any questions affecting only individual members, and that a class action is "superior" to other available methods for the fair and efficient adjudication of the controversy.  <u>Id</u>. 23(b).

A district court must undertake a "rigorous analysis" in order to determine whether each of these Rule 23 requirements are met.  <u>Heerwagen v. Clear Channel Communications</u>, 435 F.3d

3

219, 225 (2d Cir. 2006).  This analysis may require the resolution of "factual disputes relevant to

each Rule 23 requirement" and a court may make findings with respect to "whatever underlying

facts are relevant to a particular Rule 23 requirement."  In re IPO Sec. Litigation, 471 F.3d 24,

41 (2d Cir. 2006).  In making such findings, it is not sufficient that there be "some showing" by

plaintiff that the requirements are met.  Id. at 42.  Rather, a "district judge is to assess all of the

relevant evidence admitted at the class certification stage and determine whether each Rule 23

requirement has been met, just as the judge would resolve a dispute about any other threshold

prerequisite for continuing a lawsuit."  Id.  This includes weighing "conflicting evidence" where

it exists.  Id.  A judge must make his determinations about the Rule 23 requirements even where

doing so requires the determination of an issue that is "identical to an issue on the merits."  Id.

However, any such Rule 23 fact-finding "is not binding on the trier of facts" on the merits, "even

if that trier is the class certification judge."  Id. at 41.

## II.   Claims and Defenses Presented

Because Rule 23 requires a court to make determinations relating to the "claims or

defenses" of the parties, it is necessary to specify just what those claims and defenses are.  Here,

plaintiffs' claims are based on the NYLL provision requiring employers to pay all employees for

overtime at a rate one and one-half times their regular rate of pay.  NYLL §§ 650 et seq.; N.Y.

Comp. Codes R. & Regs. tit. 12, § 142-2.2.

However, the issue in dispute in this case is not whether Duane Reade paid overtime,

which it admits it did not, but whether its failure to pay overtime is excused by one or more of

the statutory exceptions to the requirement.  Employees are "exempt" from the overtime

requirements, among other exceptions, if they are working in "a bona fide executive [or]

4

administrative" capacity.  29 U.S.C. § 213.[1]  The "executive" exception applies to employees who (a) have as their "primary duty" the "management of the enterprise," (b) "customarily and regularly" direct the work of two or more employees, and (c) have authority to hire and fire other employees, or make suggestions relating to hiring and firing that are given "particular weight." 29 C.F.R. § 541.100.  The "administrative" exception applies to employees who have as their "primary duty" the "performance of office or non-manual work directly related to the management or general business operations of the employer," (b) requiring the "exercise of discretion and independent judgment with respect to matters of significance."  29 C.F.R. § 541.200.[2]  In addition, an employer is not liable for its failure to pay overtime if the decision not to pay such wages was made "in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation" of the Department of Labor. 29 U.S.C. § 259(a).  Whether these exceptions to the overtime requirement are satisfied is the disputed issue, and hence forms the backdrop for evaluating whether the Rule 23 requirements are met.

---

[1] The FLSA exceptions set forth in 29 U.S.C. § 213 are controlling because New York's overtime exceptions are defined by reference to them.  See N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2.

[2] The regulations defining the executive and administrative exceptions were amended in 2004, but those amendments are not relevant to the issues presented by this motion.  Compare 29 C.F.R. 541.100 (2008) with 29 C.F.R. 541.1 (2004), and 29 C.F.R. § 541.200 (2008) with 29 C.F.R. § 541.2 (2004).

III.    **Application of Rule 23 Requirements**

    A.    <u>Numerosity</u>

The first requirement of Rule 23 is that "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Numerosity is generally presumed where a class consists of 40 or more members.  <u>Consol. Rail Corp. v. Town of Hyde Park</u>, 47 F.3d 473, 483 (2d Cir. 1995).  Duane Reade employed at least 270 assistant managers during the class period.  (Neilan Decl. Ex. TTT.)  Consequently, the numerosity requirement is satisfied.

    B.    <u>Commonality</u>

The second requirement of Rule 23 is that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Commonality "does not mean that all issues must be identical as to each member, but it does require that plaintiffs identify some unifying thread among the members' claims that warrant[s] class treatment."  <u>Bolanos v. Norwegian Cruise Lines Ltd.</u>, 212 F.R.D. 144, 153 (S.D.N.Y. 2002) (citation and internal quotation marks omitted). "[C]ourts have liberally construed the commonality requirement to mandate a minimum of one issue common to all class members."  <u>Trief v. Dun & Bradstreet Corp.</u>, 144 F.R.D. 193, 198-99 (S.D.N.Y. 2001).

Here, both disputed questions of law are common to all class members' claims for relief: (1) whether the class member is exempt from NYLL overtime requirements because he or she performs either "executive" or administrative" duties; (2) whether Duane Reade's decision to qualify the class member as exempt is excused by "good faith" reliance on an audit by the Department of Labor.  Defendants do not contest that these legal issues are common to all class members.

Defendants do argue that plaintiffs will require individualized *proof* of at least the first issue, because "whether or not each [class member] is properly classified as exempt can only be determined by an individual examination of . . . each potential class member." (D. Opp'n 7.) This does not defeat commonality. As an initial matter, Duane Reade only contests the commonality of the proof of the first legal question. It does not contest the commonality of proof with regard to the "good faith" defense. Nor does it contest that the first question of law is common to all plaintiffs, even if some questions of fact it raises are not. Given the "liberal[]" construction of commonality, these common questions of law and fact are sufficient to satisfy the requirement.

Moreover, even with regard to the first question of law, there are significant elements of proof that are common across all class members, and that do not require an individualized examination. A single Duane Reade document lays out in some detail the duties of the assistant manager position. (Neilan Decl. Ex. G.) It states that assistant store managers are responsible for such things as "[a]nswer[ing] customers' questions and handl[ing] complaints," "direct[ing] the packing, scanning and storage of seasonal merchandise for future sales," "maintain[ing] store appearance," and "assign[ing] specific duties and oversee[ing] day to day work of store personnel." (Id.) It may be true that, as Duane Reade argues, "the work actually performed by an employee . . . and not any description or agreement . . . controls the determination of the employee's primary duty." (Def. Opp'n 8.)[3] But this job description is unquestionably probative

_____

[3] Duane Reade purports to quote 29 C.F.R. 541.700 for this proposition, but the purported quote does not appear in that regulation. A *similar* proposition appears at 29 C.F.R. § 541.2 ("A job title alone is insufficient to establish the exempt status of an employee. The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations in this part.")

of those actual duties.  Thus, interpreting whether the duties described in this document are

consistent with either the "executive" or "administrative" exceptions is a relevant question

common to all class members.

There is also testimony by Michael DeFazio, Duane Reade's Director of Store

Operations, about the authority of assistant managers to perform many store functions.  (Neilan

Decl. Ex. PP ("DeFazio Dep.") 130-66).  For example, DeFazio testified that an assistant

manager is not permitted on his own authority to hire employees (id. 135), fire employees (id.

138), give them raises (id. 138-39), promote them (id. 141-42), or transfer them to another store

(id. 146).  The authority to perform these functions does not, according to DeFazio, vary from

assistant manager to assistant manger, but rather, is set by "protocols" that are "applied to all

Duane Reade stores in New York State."  (Id. 147.)  This testimony is clearly relevant to the

question of whether the assistant manager is either an "executive" or "administrative" position.

Hence, the weight accorded to it presents common questions of fact applicable to all class

members.

Finally, there is evidence about the basis for Duane Reade's decision, in 1998, to

reclassify assistant managers as exempt.  According to testimony by Jim Rizzo, Duane Reade's

Vice President of Human Resources, the decision was made not because of changes to the duties

of assistant managers, nor because of a systematic re-evaluation of what duties the position

entailed, but rather based on an agreement struck between Duane Reade and its employees'

union to end the union's representation of assistant managers.  (Neilan Decl. Ex. CCC (First

Rizzo Dep.) 78-79; Neilan Decl. Ex. E (Arbitration Award) 11; Neilan Decl. Ex. DDD ("Second

Rizzo Dep.") 65-68.)  As with the job description, evidence of Duane Reade's basis for the

policy change does not answer the question of whether the assistant manager's duties are of an "executive" or "administrative" nature.  Indeed, it may be, as Duane Reade contends, that this evidence is "simply an acknowledgment . . . that Duane Reade [assistant managers] were, in fact, supervisors who should not have the same labor representative as the employees they supervise." (Def. Opp'n 11.)  But that is a question for the fact-finder on the merits, not for the Court on this motion for class certification, and the appropriate interpretation of this evidence is a question that is common among all class members.

In spite of these common issues, Duane Reade argues that there are material differences in the duties of different assistant managers that make an individual examination of each position necessary.  But this argument does not refute the existence of common issues.  Rather, it argues that whatever common issues exist are overwhelmed by issues particular to individual class members.  As such, the argument is more appropriately addressed below in respect to the predominance requirement.  As for commonality, plaintiffs have demonstrated that there are common questions of law as to whether or not the assistant manager's duties fall into the "executive" or "administrative" exceptions, and whether Duane Reade is entitled to an affirmative defense of "good faith" reliance on a Department of Labor audit, and that there are common factual issues relevant to answering each question.  Particularly in light of the "liberal" construction of the commonality requirement of Rule 23, the Court finds the requirement easily satisfied.

C.    Typicality

The next requirement of Rule 23 is that the claims of the named plaintiffs purporting to represent the class be "typical of the claims . . . of the class."  Fed. R. Civ. P. 23(a)(3).  While

this inquiry is related to the commonality inquiry, "the commonality inquiry establishes the existence of a certifiable class," whereas "the typicality inquiry focuses on whether the claims of the putative class representatives are typical of the class sharing common questions." In re Frontier Ins. Group, Inc. Sec. Litig., 172 F.R.D. 31, 41 (E.D.N.Y. 1997).  The claims are typical "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." Marisol A. v. Giuliani, 126 F.3d 372, 376 (2d Cir. 1997).  As with commonality, typicality need not be complete.  Typicality "does not require that the factual background of each named plaintiff's claim be identical to that of all class members; rather, it requires that the disputed issue of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 293 (2d Cir. 1999). See also Bolanos v. Norwegian Cruise Lines Ltd., 212 F.R.D. 144, 155 (S.D.N.Y. 2002) ("Since the claims only need to share the same essential characteristics, and need not be identical, the typicality requirement is not highly demanding."), citing 5 Moore's Federal Practice § 23.24.

As discussed above, all class members' claims, including those of named plaintiffs, are based on the same course of events and legal theory, namely, that Duane Reade's decision to classify its assistant managers as "exempt" is inconsistent with the requirements of the NYLL. Duane Reade attempts to defeat typicality by pointing out examples of management responsibilities that some assistant managers testify they exercised.  For example, they say that some named plaintiffs testify that they were "in charge" of the store when store managers were absent, that they had responsibilities to train and supervise other store employees, to make recommendations on hiring and firing employees, to recommend ordering of supplies, and that

10

they attended management meetings.  (Def. Opp'n 14-16.)

This evidence does not defeat typicality.  First, as will be discussed below with regard to predominance, the evidence does not establish significant differences in the responsibilities exercised by different assistant managers.  Second, to the extent that there are such differences, they do not make named plaintiffs' claims atypical.  For all assistant managers, the essential issue is whether their "executive" or "administrative" responsibilities, if any, were extensive enough to be considered their "primary duty."  Because this disputed issue "occup[ies] essentially the same degree of centrality" for named plaintiffs as for the rest of the class, typicality is satisfied.  See Caridad, 191 F.3d at 293 (in challenge to discriminatory application of disciplinary procedure, fact that two of the named plaintiffs admitted to committing the infractions for which they were disciplined does not defeat typicality); Marisol A. v. Giuliani, 126 F.3d 372, 377 (2d Cir. 1997) (in challenge to child welfare practices, "unique circumstances of each child" do not defeat typicality/commonality).

     D.    <u>Adequacy</u>

Adequacy requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  To determine whether a named plaintiff will be an adequate class representative, courts inquire whether: "1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation."  <u>Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.</u>, 222 F.3d 52, 60 (2d Cir. 2000).  The fact that plaintiffs' claims are typical of the class is strong evidence that their interests are not antagonistic to those of the class; the same strategies that will vindicate plaintiffs' claims will vindicate those of the class.  In addition, plaintiffs'

attorneys are qualified to conduct the litigation.  Plaintiffs are represented by attorneys from two

firms, Outten & Golden LLP ("O&G") and Locks Law Firm, PLLC ("Locks").  O&G has an

established record of competent and successful prosecution of large wage and hour class actions,

and the attorneys working on the case are likewise competent and experienced in the area.  (See

Swartz Decl. ¶¶ 10-11, 23-27.)  Locks is similarly qualified.  (See Lesser Decl. ¶¶ 8-10.)  Duane

Reade contests neither the alignment of plaintiffs' interests with those of the class, nor the

qualifications of plaintiffs' counsel.  Accordingly, the Court finds that plaintiffs satisfy the

adequacy requirement of Rule 23.

  E.  <u>Predominance</u>

  Having satisfied the four prerequisites of Rule 23(a), plaintiffs must also satisfy one of

three subsections of Rule 23(b).  The relevant subsection in this litigation is 23(b)(3), which

requires that "the court finds that the questions of law or fact common to class members

predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).

The inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by

representation."  <u>Amchem Products, Inc. v. Windsor</u>, 521 U.S. 591, 623 (1997).  It is "more

demanding" than the commonality inquiry under Rule 23(a), because it requires not only that

there be disputed issues that can be resolved through "generalized proof," but also that "these

particular issues are more substantial than the issues subject only to individualized proof."

<u>Moore v. PaineWebber, Inc.</u>, 306 F.3d 1247, 1252 (2d Cir. 2002).

  As discussed above in regards to commonality, plaintiffs have established that there are

disputed issues that can be resolved through generalized proof.  However, Duane Reade argues

that "individual issues predominate" because "the duties and responsibilities of [assistant

12

managers] varied . . . in ways that bear upon an analysis of whether or not management was the 'primary duty' of individual [assistant managers]." (Def. Opp'n 24.)  It contends that assistant managers' duties depend on a number of factors, such as the store manager they work under, the amount of experience they have, and specific differences in the stores, such as their size, hours of operation, sales volume, and location. (Id. 18-20.)  Duane Reade asserts that some assistant managers have "testified at length regarding their management responsibilities." (Id. 14.)

The weight of evidence does not support Duane Reade's position.  As pointed out in an earlier opinion of the Court, Duane Reade has "conceded that the business practices at issue in this case are uniform among its stores," and that the duties and responsibilities of assistant managers are "centrally derived." Chowdhury, 2007 WL 2873929 at *4.  Duane Reade sets forth the duties of all assistant managers in a single job description document (Neilan Decl. Ex. G), and has a single set of "protocols" that are "applied to all Duane Reade stores in New York State" (DeFazio Dep. 147).  Duane Reade also has a single "Employee Rules Handbook" governing the behavior of store level employees, including assistant managers, in all Duane Reade stores. (Id. 27-29.)  Thus, as DeFazio testifies, Duane Reade applies "one consistent policy throughout the entire chain; so that each store has the same exact policy as every other store." (Id. 30.)  This is corroborated by a store manager, who has worked in five different stores, and states that "[t]here was no significant variation in the job duties of assistant managers in any of the five stores I worked in." (Neilan Decl. Ex. M (Boswell Decl.) ¶ 14.)  Duane Reade also admits that it does not consider any factors other than job title in deciding to categorize an assistant manager as exempt. (Second Rizzo Dep. 146.)  That is to say, Duane Reade considers all assistant managers exempt, regardless of a store's hours of operation (id. 147), size (id. 148),

sales volume (id. 149), location (id. 151), and regardless of an assistant manager's work shift
(id.), tenure (id. 150), management style (id.) or any other of the factors that Duane Reade now
argues might contribute to material differences in the responsibilities of assistant managers.  That
Duane Reade itself makes such a blanket determination is evidence that differences in the
position, to the extent that there are any, are not material to the determination of whether the job
is exempt from overtime requirements.

      Nor does the testimony of assistant managers themselves reveal material differences in
their responsibilities.  It is true that each side has submitted declarations by assistant managers
describing their job responsibilities in ways that to some extent vary from one another.  (Compare
Neilan Decl. Exs. I-L, N-AA, DD-HH, with Fuchs Decl. Exs. 31-42.)  These declarations might
suggest that there are material differences in responsibilities across assistant managers, if they
were credible.  However, the declarations were clearly composed by lawyers, with little input, it
seems, from the assistant managers themselves.  Plaintiffs' declarations are in all material
respects identical one another, and very neatly contradict those declarations offered by Duane
Reade, which are in turn identical to one another.  Each side's declarations contain statements
obviously crafted to describe a position that either does or does not conform to the "executive"
or "administrative" exceptions to the overtime requirements, rather than to describe realistically
what the position actually entails.  For example, every single declaration submitted by plaintiffs
attests that "I spent approximately 90% of any shift performing manual labor-type duties," and
makes no mention of any regular supervisory activities.  (See, e.g., Neilan Decl. Ex. I ¶ 6.)  By
contrast, every single assistant manager declaration submitted by defendants attests that "[m]y
primary duties . . . involved managing the Duane Reade store," and makes no mention of any

manual labor, except to say that the assistant manager "sometimes assisted" in unloading inventory deliveries, but then only to "serve as an example to my employees."  (See, e.g., Fuchs Decl. Ex. 31 ¶¶ 7-8, 14.)

These declarations are simply not credible in light of the deposition testimony of assistant managers. (See Fuchs Decl. Exs. 5, 6, 9, 15-17, 19, 24, 26-27.)  In some cases, the deposition testimony directly contradicts the declarations.  For example, Dayanand Baldeo declares in her written statement, using the same boilerplate language that appears in all of plaintiffs' declarations, that she "did not really direct the work of other employees," and that she "did not make any recommendations" on hiring, firing or promotions.  (Neilan Decl. Ex. J ¶¶ 11-12.)  But in her deposition testimony she contradicts this, agreeing that she could "direct [an employee] to perform another task," and that she "did make recommendations about hiring, firing, promoting and demoting employees."  (Fuchs Decl. Ex. 6 at 329, 332.)

More generally, there is nothing in the deposition testimony to support the extreme discontinuity in the roles of different assistant managers that a literal reading of the declarations would suggest: some assistant managers devoted almost exclusively to manual labor, others almost exclusively to management.  Rather, the deposition testimony suggests that while assistant managers regularly spend significant parts of their shifts performing manual labor activities like sweeping and mopping the store, they are at the same time responsible for directing the work of other store personnel engaged in similar tasks.  (See, e.g., Fuchs Decl. Ex. 9 at 233-34; Fuchs Decl. Ex. 13 at 301-02; Fuchs Decl. Ex. 15 at 45; Fuchs Decl. Ex. 16 at 143-44; Fuchs Decl. Ex. 17 at 257-58.)  It is not possible (or necessary) at this stage to decide precisely how the mix of responsibilities is apportioned, but it appears from the depositions to be

largely consistent across assistant managers.  While the declarations of assistant managers

offered by the parties are sharply at odds with one another, the Court finds the deposition

testimony more reliable than these prepared written statements, because it is in the witnesses'

own words, and because opposing counsel has had an opportunity for cross examination.  Giving

little weight to the written declarations of assistant managers, the remaining evidence supports

that the responsibilities of assistant managers are largely consistent.

    Moreover, to the extent that there are differences, there is no evidence that they are of

such a magnitude as to cause individual issues to predominate.  Where, as here, there is evidence

that the duties of the job are largely defined by comprehensive corporate procedures and

policies, district courts have routinely certified classes of employees challenging their

classification as exempt, despite arguments about "individualized" differences in job

responsibilities.  See, e.g., Krzesniak v. Cendant Corp., No. C 05-05156, 2007 WL 1795703, at

*3 (N.D. Cal. Jun. 20, 2007) (improper classification of branch managers at car rental chain);

Alba v. Papa John's USA, Inc., No. CV 05-7487, 2007 WL 953849, at *1 (C.D. Cal. Feb. 7,

2007) (improper classification of store managers at pizza delivery chain); Torres v. Gristede's

Operating Corp., No. 04 Civ. 3316, 2006 WL 2819730, at *2 (S.D.N.Y. Sep. 29, 2006)

(improper classification of store co-managers and department managers at supermarket chain);

Whiteway v. FedEx Kinko's Office and Print Services, Inc., No. C 05-2320, 2006 WL 2642528,

at *1 (N.D. Cal. Sep. 14, 2006) (improper classification of "center managers" at shipping and

print services retail chain); Tierno v. Rite Aid Corp., No. C 05-02520, 2006 WL 2535056, at *1

(N.D. Cal. Aug. 31, 2006) (improper classification of store managers at drug store chain);

Goldman v. Radioshack Corp., No. Civ.A. 03-0032, 2005 WL 1124172, at *4 (E.D. Pa. May 9,

2005) (improper classification of store managers at electronics chain).[4]

In sum, the record establishes that the responsibilities of assistant managers are derived and controlled by policies and protocols issued by Duane Reade, and do not vary materially from store to store.  Apparent inconsistencies in the record are the result of overly aggressive lawyering rather than credible testimony of assistant managers or anyone else.  Because the weight of evidence supports the position that the job responsibilities for assistant managers are largely and materially consistent, there is no merit to Duane Reade's argument that inconsistencies in the position defeat predominance.  In light of all the evidence of common issues among plaintiffs, and the lack of evidence of individual issues, the Court finds that the predominance requirement is satisfied.

---

[4] Duane Reade cites a number of cases in which courts denied class certification to employees alleging misclassification, because the courts found that the proof of the actual duties of the job would be highly individualized.  (See Def. Opp'n 8, 21-23.)  These cases are distinguishable because in none of them did plaintiffs offer substantial evidence, as they have here, of comprehensive corporate policies that defined the job's duties.  See Myers v. Hertz Corp., No. 02 Civ. 4325, 2007 WL 2126264, at *5  (E.D.N.Y. Jul. 24, 2007) ("[P]roof of liability will not turn on what Hertz did or did not do vis-à-vis the entire class, but rather what each member of the class does on a daily basis."); Jimenez v. Domino's Pizza, Inc., 238 F.R.D. 241, 253 (C.D. Cal. 2006) ("[T]his is not the typical case where a class can be certified because the class members' duties are, or can be determined to be, roughly identical."); Diaz v. Electronics Boutique of America, Inc., No. 04-CV-0840E, 2005 WL 2654270, at *7 (W.D.N.Y. Oct. 17, 2005) (determination of class members' job responsibilities requires "a detailed factual analysis of [each class member's] daily activities and responsibilities); Holt v. Rite Aid Corp., 333 F. Supp. 2d 1265, 1272 (M.D. Ala. 2004) (rejecting plaintiffs' reliance only on "representative proof" and not company-wide policies to establish class members' job duties); Mike v. Safeco Ins. Co. of America, 274 F. Supp. 2d 216, 220 (D. Conn. 2003) ("The merits of [plaintiff's] claim will turn upon evidence relating to [his] day-to-day tasks, and not upon any Safeco company policy or decision.").

F.    Superiority

The final question to be addressed under Rule 23(b) is whether the "class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).  Plaintiffs argue that a class action is superior to litigation by individual plaintiffs because individual suits would be prohibitively costly relative to the value of the claims, impractically expensive given the potential plaintiffs' limited economic means, and a waste of judicial resources because common issues predominate over individual ones.  (Pl. Mem. 31-32.)  Duane Reade does not contest the superiority of a class action to individual suits, but does contest its superiority to another "available method" for adjudication, namely, the "collective action" that has already been certified by this Court in both actions pursuant to the FLSA.

A collective action is similar to a class action in that it "allows employees to sue on behalf of themselves as well as employees who are 'similarly situated.'"  <u>Damassia</u>, 2006 WL 2853971 at *2, quoting 29 U.S.C. § 216(b).  But in a collective action, "only plaintiffs who affirmatively opt in can benefit from the judgment or be bound by it," whereas in a class action potential class members are parties to the suit unless they affirmatively opt *out*.  <u>Id</u>.  "These two types of class actions are mutually exclusive," so suits seeking relief under the FLSA may proceed only through a collective action, and not a class action.  <u>Lachapelle v. Owens-Illinois, Inc.</u>, 513 F.2d 286, 289 (5th Cir. 1975).

While there is no provision under the NYLL for a collective action, Duane Reade argues, correctly, that potential class members could pursue their NYLL claims through a collective action by opting in to the FLSA collective action, and then asking this Court to adjudicate their

pendent NYLL claims through an exercise of supplemental jurisdiction.  (Def. Opp'n 26, citing Leuthold v. Destination Am., Inc., 224 F.R.D. 462, 469 (N.D. Cal. 2004).)  Further, Duane Reade argues that litigation of the NYLL claims through collective actions would be superior to litigation through a class action because to litigate through a class action would (1) "nullify Congress's intent in requiring plaintiffs to affirmatively opt in to collective actions for wage claims;" (2) cause the Court to assert supplemental jurisdiction over a greater number of state law claimants than federal claimants; (3) cause individual plaintiffs who fail to opt-out of the classes to become bound by the outcome of that suit and to waive their rights to liquidated damages; and (4) cause confusion by sending additional notices to class members who have already received notices for the collective actions.  (Def. Opp'n 27.)

Whether a plaintiffs can satisfy the Rule 23 superiority requirement for state law overtime claims where a collective action under the FLSA is available was recently considered in Guzman v. VLM, Inc., No. 07-CV-1126, 2008 WL 597186 (E.D.N.Y. Mar. 2, 2008).  In a thorough and carefully reasoned opinion, Judge Gleeson persuasively rejected the same arguments now raised by Duane Reade.  First, it is not correct that allowing a class action under these circumstances would "nullify Congress's intent."  It is true that the FLSA requires that employees opt in to collective actions to benefit from any judgment, whereas Rule 23 allows employees to benefit so long as they do not opt out.  But by its own terms, the opt-in requirement of Section 216(b) applies only to wage claims brought under the substantive provisions of the FLSA.[5]  Congress has only spoken with regard to FLSA wage claims, not wage claims generally,

---

[5] Duane Reade misquotes Section 216(b) to imply that the opt-in requirement applies to "any action" for redress of wage claims, rather than merely any action for redress of FLSA wage claims.  Compare Def. Opp'n 27-28 (purportedly quoting Section 216(b) to read that "no

and has expressed no policy preference with respect to whether to certify a class for state law

wage claims.  It is "settled in the Second Circuit that the FLSA does not preempt state wage and

hour laws," Guzman, 2008 WL 597186 at *10, citing Overnite Transp. Co. v. Tianti, 926 F.2d

220, 222 (2d Cir. 1991), and hence "there is no reason that FLSA's collective action procedure is

incompatible with maintaining a state law class action over the same conduct," Guzman, 2008

WL 597186 at *10.

Duane Reade argues that the two actions are, in some abstract sense, incompatible with

each other, because one permits what the other forbids, but "[t]here is no legal doctrine, of which

the Court is aware, that permits the Court to dismiss a cause of action solely on the grounds that

it is 'inherently incompatible' with another action before it."  Id., quoting Westerfield v. Wash.

Mut. Bank, No. 07-CV-2817, 2007 WL 2162989, at *3 (E.D.N.Y. Jul. 26, 2007) (rejecting

argument of inherent incompatibility between state law wage class actions and FLSA collective

actions).

Second, defendants' concern about the exercise of supplemental jurisdiction where the

number of state law claimants outnumber the federal law claimants is unwarranted.  It is true that

if a class is certified, there would likely be more NYLL claimants than FLSA claimants, since

only about 10% of those eligible for the FLSA collective action have opted in (see Fuchs Decl.

¶¶ 2-3.), while far more class members would likely choose to remain in a class action under the

---

employee shall be a party to *any action* unless he gives his consent in writing to become such a
party") (emphasis added) with 29 U.S.C. § 216(b) (stating that "[n]o employee shall be a party
plaintiff to *any such action* unless he gives his consent in writing to become such a party," where
"such action" refers to "an action to recover" under the substantive provisions of the FLSA)
(emphasis added).  Whether the misquotation was intended to deceive the Court or was simply
the result of sloppy lawyering, it is unacceptable.

NYLL.  But while a federal court may decline to exercise supplemental jurisdiction where a state law claim "substantially predominates" over the federal claims, such predominance refers to the type of claim, not the number of claimants.  Lindsay v. Government Employees Ins. Co., 448 F.3d 416, 425 & n.12 (D.C. Cir. 2006), citing United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726-27 (1966).

Moreover, the decision to decline supplemental jurisdiction should be guided by an assessment of "judicial economy, convenience, fairness and comity," Guzman, 2008 WL 597186 at *9, quoting Klein & Co. Futures, Inc. v. Bd. of Trade, 464 F.3d 255, 262 (2d Cir. 2006), and none of those factors counsels against exercising supplemental jurisdiction.  In an overtime case brought under both the NYLL and the FLSA, the "factual overlap between the federal claims and the state claims is virtually total," so it would "ill serve the interests of convenience or judicial economy to relitigate in state court the defendants' pay practices."  Guzman, 2008 WL 597186 at *9.  Fairness also weighs in favor of supplemental jurisdiction, to the extent that "employees may feel intimidated about volunteering to participate" in an opt-in collective action.  Id. Finally, comity does not counsel against supplemental jurisdiction, "due to the straightforward nature of the legal questions under state law."  Id.

Third, concerns about class plaintiffs being bound by res judicata and waiving rights to liquidated damages are misplaced.  It is true that potential class members who do not opt out of the class action could have "all claims that could have been brought in that action, including any FLSA claim, resolved by res judicata without opting in to the FLSA action."  Guzman, 2008 WL 597186 at *10 n.11.  Similarly, by participating in the class they will waive their rights to liquidated damages. (See Damassia Compl., Prayer for Relief ¶ G; Chowdhury Compl., Prayer

for Relief ¶ G.)  However, as in any Rule 23(b)(3) class action, potential class members who want to control their own litigation, and to avoid being bound by the judgment in the class action, are free to opt out of the class.  See Fed. R. Civ. P. 23(c)(2)(B)(v).

Thus, the disadvantages of a class action advanced by Duane Reade really only affect those potential class members who desire to opt out of the class action, but who fail to do so for some reason, such as a failure to receive notice, or to understand the substance and requirements of that notice.  Rule 23's requirements of adequate notice are designed to protect class members against these risks; there is no reason to assume that they will fail to do so.  In any event, a collective action entails similar but converse disadvantages, insofar as there will be potential collective action participants who fail to opt in for reasons of insufficient notice, and thereby lose out on an opportunity to participate in the rewards of a successfully litigated claim.  Precisely quantifying these costs – to those wrongly included in class actions, or to those wrongly excluded from collective actions – is not possible, but there is no reason to think that the one will significantly outweigh the other.  Indeed, it may be that in the wage claim context, "the opt-out nature of a class action is a valuable feature lacking in an FLSA collective action," insofar as "many employees will be reluctant to participate in the action due to fears of retaliation." Guzman, 2008 WL 597186 at *8.  Accordingly, the concern about including class members who do not really want to participate in the class deserves little weight in assessing whether a class action is superior to other available methods of adjudication.

Fourth, the potential confusion to class members of receiving multiple notices is not a significant concern.  Any possibility of confusion "can be allayed through careful wording of the class notice," and "any confusion that the dual notices may cause" does not "significantly

undermine the superiority of a class action." Id.

Finally, while Duane Reade cites a number of authorities from outside the Second Circuit in which courts have refused to certify state labor law classes in FLSA actions, "courts in the Second Circuit routinely certify class action[s] in FLSA matters so that New York State and federal wage and hour claims are considered together." Duchene v. Michael L. Cetta, Inc., 244 F.R.D. 202, 204 (S.D.N.Y. 2007) (certifying class). See, e.g., Guzman, 2008 WL 597186 at *1; Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 366 (S.D.N.Y. 2007); Toure v. Central Parking Systems of New York, No. 05 Civ. 5237, 2007 WL 2872455, at *9 (S.D.N.Y. Sep. 28, 2007); Lee v. ABC Carpet & Home, 236 F.R.D. 193, 196 (S.D.N.Y. 2006); Torres, 2006 WL 2819730, at *1; Jankowski v. Castaldi, No. 01CV0164, 2006 WL 118973, at *1 (E.D.N.Y. Jan. 13, 2006); Scholtisek v. Eldre Corp., 229 F.R.D. 381, 395 (W.D.N.Y. 2005); Noble v. 93 University Place Corp., 224 F.R.D. 330, 346 (S.D.N.Y. 2004); Scott v. Aetna Services, Inc., 210 F.R.D. 261, 268 (D. Conn. 2002); Ansoumana v. Gristede's Operating Corp., 201 F.R.D. 81, 96 (S.D.N.Y. 2001); Brzychnalski v. Unesco, Inc., 35 F. Supp. 2d 351, 353 (S.D.N.Y. 1999). But see De la Cruz v. Gill Corn Farms, Inc., No. 03-CV-1133, 2005 WL 5419056, at *2 (N.D.N.Y. Jan. 25, 2005) (denying class certification because "the Court feels that [employees'] rights are not adequately protected by employing a class procedure whereby they will automatically waive their right to pursue liquidated damages by failing to opt out . . . that is, by doing nothing").

A class action is superior to other available methods of adjudication in these disputes because it allows for a more cost-efficient and fair litigation of common disputes. Duane Reade's argument that class certification should be denied because it is preferable that potential class members proceed through an FLSA collective action is unpersuasive, particularly in light

of the overwhelming precedent in the Second Circuit supporting certification of simultaneous NYLL class actions and FLSA collective actions.  Hence, the superiority requirement of Rule 23 is satisfied.

## IV.    Conflict with Rules Enabling Act

Duane Reade argues that class certification be denied for the independent reason that such certification is prohibited by the Rules Enabling Act, which prevents a federal court from applying a procedural rule in such a way as to "abridge, enlarge or modify any substantive right."  28 U.S.C. § 2072(b).  According to Duane Reade, certifying the class would abridge the rights both of Duane Reade and of potential class members to the protections of the opt-in requirement.  For potential class members, the substantive right at issue is the right to have his or her FLSA claims litigated "only with his or her express written consent."  (Def. Opp'n 38.)  This is arguably abridged by the class action because "once the class state law claims are adjudicated, res judicata will bar any further litigation by those individuals seeking overtime pursuant to the FLSA."  (Id. 39.)  For Duane Reade, the substantive right at issue is the right to be "free . . . of the burden of representative actions."  (Id. 38.)

These arguments are unpersuasive.  Duane Reade relies on a single district court decision from another circuit for the proposition that the Rules Enabling Act prevents the certification of a class for state wage claims related to FLSA wage claims.  See Ellis v. Edward D. Jones & Co., L.P., 527 F. Supp. 2d 439, 454-60 (W.D. Pa. 2007).  Ellis reaches its conclusion based on the somewhat counter-intuitive proposition that while the opt-*out* requirement of Rule 23 is "procedural," the opt-*in* requirement of the FLSA is "substantive," and that therefore the Rules Enabling Act requires that the former yield to the latter.

24

It is far more natural to see the opt-in provisions of the FLSA, like the class action rules they resemble, simply as procedural mechanisms for vindication of the substantive rights provided by the FLSA.  See Westerfield, 2007 WL 2162989 at *1 ("Section 216(b) by its terms governs procedural rights.").  In any event, however, even if the opt-in requirement is read to confer a substantive right, it does not follow that the Rules Enabling Act prevents class certification of state law wage claims.  The right conferred by the opt-in requirement on an employee is not, as Duane Reade contends, to have his or her FLSA claims litigated "only with his or her express written consent;" rather, it is the right not to "be a party plaintiff to [a collective] action unless he gives his consent in writing to become such a party."  29 U.S.C. § 216(b).  Since the certification of a class does not affect an employee's ability to opt in or not to an FLSA collective action, such certification does not "abridge, enlarge or modify" the rights conferred by the FLSA, whether those rights are substantive or procedural.  "Even if the right to opt-in is a substantive right, the right is not modified or abridged in any way by permitting a state law opt-out class to proceed alongside the FLSA opt-in class in the same case." Westerfield, 2007 WL 2162989 at *2; see also Guzman, 2008 WL 597186 at *10 (rejecting argument that Rules Enabling Act precludes class action for state law wage claim); Sjoblom v. Charter Communications, LLC, No. 3:07-cv-0451, 2007 WL 4560541, at *5 (W.D. Wis. Dec. 19, 2007) ("Even if the right to opt in is substantive, that right is not modified or abridged in any way by permitting a state law opt-out class to proceed alongside the federal opt-in collective action in the same case.").

Similarly, the right conferred on an employer by the opt-in requirement is not the expansive right to be "free . . . of the burden of representative actions" generally, but rather, the

right to be free of the burden of representative actions specifically for violations of the FLSA.

Since plaintiffs seek certification of a class for violations of the NYLL and not the FLSA, such

certification also does not "abridge, enlarge or modify" that right.  "The FLSA guarantees

merely that all collective actions brought pursuant to it be affirmatively opted into.  It does not

guarantee that employers will never face traditional class actions pursuant to state employment

law."  Klein v. Ryan Beck Holdings, Inc., No. 06 Civ. 3460, 2007 WL 2059828, at *6 (S.D.N.Y.

Jul. 13, 2007 ) (rejecting argument that Rules Enabling Act precludes class action for state law

wage claim).  By its own terms, the FLSA opt-in requirement does not confer rights on

employers or employees with respect to the manner of litigation of *state law* wage claims.

Accordingly, the Rules Enabling Act presents no barrier to certification of the class plaintiffs

propose.

**V.      Appointment of Class Counsel**

Having satisfied all the requirements for certification of the classes pursuant to Rule 23,

the only question that remains is whether plaintiffs' counsel – O&G and Locks – should be

appointed counsel for the classes.  In deciding whether counsel is "adequate" to represent the

class, a court must consider "the work counsel has done in identifying or investigating potential

claims in the action, . . . counsel's experience in handling class actions, other complex litigation,

and claims of the type asserted in the action, . . . counsel's knowledge of the applicable law, and

. . . the resources counsel will commit to representing the class."  Fed. R. Civ. P. 23(g).  The

Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately

represent the interests of the class."  Id.

As discussed above in regard to the adequacy requirement of Rule 23(a), plaintiffs' counsel are experienced in handling wage and hour class actions and have knowledge of the applicable law.  In addition, O&G and Locks have represented plaintiffs in these suits since they were initiated, and so have extensively investigated potential claims in the action.  (Swartz Decl. ¶¶ 19-22; Lesser Decl. ¶¶ 4-5)  Both firms are mid-sized firms with the resources and demonstrated commitment to adequately represent the class.  (Swartz Decl. ¶¶ 2, 23, 28; Lesser Decl. ¶¶ 2, 6.)  Accordingly, O&G and Locks are appointed class counsel.

## CONCLUSION

For the reasons discussed, the Court grants plaintiffs' motion for class certification. Kelvin Damassia, Arnold Caballero, Dayanand Baldeo, Marlon Fergus, Mohammed Hoque, Muhammed Khawaja, Ifeanyi Malu, Mourad Mansy, Maxwell Okeke, Delfin Ruiz, and Enamul Chowdhury are appointed class representatives, and Outten & Golden LLP and Locks Law Firm, PLCC, are appointed class counsel.


SO ORDERED.

Dated: New York, New York
     May 27, 2008

GERARD E. LYNCH
United States District Judge

27